# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| HAMZA RAMZAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>GDS HOLDINGS LIMITED, WILLIAM WEI HUANG, and DANIEL NEWMAN,<br><br>Defendants | Civil Action No.: 4:18-cv-00539-ALM-KPJ |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW REGARDING FEDERAL RULE OF CIVIL PROCEDURE 4(k)(2), IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR TRANSFER VENUE TO THE SOUTHERN DISTRICT OF <u>NEW YORK, BASED ON LACK OF PERSONAL JURISDICTION</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT FACTS ....................................................................................................................2

ARGUMENT ...............................................................................................................................3

I.      FRCP 4(K)(2) DOES NOT APPLY HERE BECAUSE DEFENDANTS HAVE
CONSENTED TO PERSONAL JURISDICTION IN NEW YORK .................................3

II.     FRCP 4(K)(2) DOES NOT APPLY BECAUSE A "SITUATION-SPECIFIC
FEDERAL STATUTE" PROVIDES PERSONAL JURISDICTION..............................5

       A.     FRCP 4(k)(2) does not apply if personal jurisdiction has been conferred
through a "situation-specific federal statute"............................................5

       B.     The SDNY has personal jurisdiction over Defendants under Section 27 of
the Exchange Act ........................................................................................8

III.    FRCP 4(K)(2) ALSO DOES NOT APPLY BECAUSE NEW YORK STATE
COURTS CAN ASSERT PERSONAL JURISDICTION OVER DEFENDANTS..........11

       A.     Personal jurisdiction is present under the "tortious act without the state
causing injury to person or property within the state" standard in N.Y.
CPLR 302(a)(3) .........................................................................................11

           1.    Defendants' Alleged Tortious Conduct Was Aimed In Significant Part At,
And Allegedly Caused Injury To, New York-Based Investors ................ 11

           2.    Defendants Also Meet Either The "Regularly Solicits Business" or
"Persistent Court of Conduct" Test Under CPLR 302(a)(3)(i)................. 13

       B.     Personal jurisdiction is also present under the "transacts business"
standard in N.Y. CPLR 302(a)(1) .............................................................14

           1.    GDS's listing on the New York-based NASDAQ stock exchange supports
"transacts business" jurisdiction .............................................................. 14

           2.    GDS's other business contacts with New York support "transacts
business" jurisdiction................................................................................. 15

CONCLUSION...........................................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Adams v. Unione Mediterranea Di Sicurta*,
   364 F.3d 646 (5th Cir. 2004) ............................................................. 1, 5, 7

*Aqua Shield, Inc. v. Inter Pool Cover Team*,
   2007 WL 4326793 (E.D.N.Y. Dec. 7, 2007) ........................................ 6

*Bristol-Meyers Squibb Co. v. Superior Court of California*,
   137 S.Ct. 1773 (2017) .......................................................................... 16

*Calder v. Jones*,
   465 U.S. 783 (1984) .............................................................................. 12

*Cortland Racquet Club, Inc. v. Oy Saunatec, Ltd.*,
   978 F. SUpp. 520 (S.D.N.Y. 1997) ..................................................... 13

*D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*,
   29 N.Y.3d 292 (2017) ........................................................................... 17

*Del Ponte v. Universal City Dev. Partners, Ltd.*,
   2008 WL 169358 (S.D.N.Y. Jan. 16, 2008) ........................................ 14

*Deutsche Bank AG v. Vik*,
   163 A.D.3d 414 (N.Y. App. Div. 1st Dep't 2018) .............................. 12

*Ehrenfeld v. Bin Mahfouz*,
   9 N.Y.3d 501 (2007) ............................................................................. 12

*Freescale Semiconductor, Inc. v. AmTran Technology Co., Ltd.*,
   2014 WL 1603665 (W.D. Tex. Mar. 19, 2014) ................................... 4

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*,
   2018 WL 4830087 (S.D.N.Y. Oct. 4, 2018) ........................................ 8

*Hilgeman v. Nat'l Ins. Co. of Am.*,
   547 F.2d 298 (5th Cir. 1977) ............................................................... 9

*In re Vitamins Antitrust Litig.*,
   94 F. Supp. 2d 26 (D.D.C. 2000) ........................................................ 6

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
   256 F.3d 548 (7th Cir. 2001) ............................................................... 4, 7

*Johnson v. PPI Tech. Servs., L.P.*,
2013 2404237 (E.D. La. May 31, 2013) ................................................................... 6

*Johnson v. PPI Tech. Servs., L.P.*,
926 F. Supp. 2d 873 (E.D. La. 2013) ...................................................................... 6

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
26 F. Supp. 2d 593 (S.D.N.Y. 1998) ..................................................................... 12

*Lawson v. Full Tilt Poker Ltd.*,
930 F. Supp. 2d 476 (S.D.N.Y. 2013) ................................................................... 12

*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012) ............................................................................... 3

*Ogden v. GlobalSantaFe Offshore Services*,
31 F. Supp. 3d 832 (E.D. La. 2014) ........................................................................ 4

*Omni Capital International v. Rudolf Wolff & Co.*,
484 U.S. 97 (1987) .............................................................................................. 6, 7

*PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*,
260 F.3d 453 (5th Cir. 2001) ................................................................................... 4

*Pharmachemie B.V. v. Pharmacia S.p.A.*,
934 F. Supp. 484 (D. Mass. 1996) ........................................................................... 8

*Plastwood Corp. v. Robinson*,
2004 WL 1933625 (S.D.N.Y. Aug. 30, 2004) ....................................................... 14

*Porina v. Marward Shipping Co., Ltd.*,
2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) *aff'd* 521 F.3d 122 (2d Cir.
2008) ......................................................................................................................... 6

*Rentea v. Janes*,
2011 WL 3022568 (W.D. Tex. July 22, 2011) ......................................................... 9

*Research in Motion Limited v. InPro II Licensing, S.A.R.L.*,
61 Fed.R.Serv.3d 154 (N.D. Tex. 2005) ................................................................. 4

*SEC v. Rizvi*,
2010 WL 2949311 (E.D. Tex. July 2, 2010) (quotation omitted), report and
recommendation adopted, 2010 WL 2949302 (E.D. Tex. July 23, 2010) ............... 9

*Simon v. Philip Morris, Inc.*,
86 F. Supp. 2d 95 (E.D.N.Y. 2000) ...................................................................... 12

*Simon v. Ultimate Fitness Group*,
    2019 WL 4382204 (S.D.N.Y Aug. 19, 2019) ........................................................ 16

*Venmill Indus., Inc. v. ELM, Inc.*,
    100 F. Supp. 3d 59 (D. Mass. 2015) ...................................................................... 8

*World Tanker Carriers v. MV Ya Mawlaya*,
    99 F.3d 717 (5th Cir. 1996 ....................................................................................... 7

*Zagami v. Cellceutix Corp.*,
    2016 WL 3199531 (S.D.N.Y. June 8, 2016) ......................................................... 10

*Ziegler, Ziegler & Assocs. LLP v. China Digital Media Corp.*,
    2010 WL 2835567 (S.D.N.Y. July 13, 2010) ........................................................ 14

## Other Authorities

28 U.S.C. § 1404(a) ........................................................................................... 10, 21

28 U.S.C. § 1406(a) ............................................................................................ 2, 21

35 U.S.C. § 293 ........................................................................................................ 10

Charles Alan Wright & Arthur R. Miller,
    4A Federal Practice and Procedure §§ 1168.1, 1169, 1124 .................................... 8

CPLR 301 .................................................................................................................. 13

CPLR 302(a)(1) ................................................................................................... 13, 17

CPLR 302(a)(3) ........................................................................................................ 17

N.Y. CPLR 302(a) .................................................................................................... 13

Section 12 of the Clayton Act ................................................................................... 9

## PRELIMINARY STATEMENT

At the September 16 hearing, months after filing its Amended Complaint and opposition to Defendants' motion to dismiss, Plaintiffs' counsel claimed—for the first time—that FRCP 4(k)(2) allows this Court to exercise personal jurisdiction over Defendants.  In addition to not being raised in a timely manner, this argument fails for multiple reasons.

*First*, Rule 4(k)(2) is inapplicable because Defendants have expressly consented to personal jurisdiction in New York with respect to this lawsuit.  Controlling Fifth Circuit law holds that Rule 4(k)(2) applies only "so long as a defendant does not concede to jurisdiction in another state."  *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004).

*Second*, Rule 4(k)(2) *does not apply* where a "situation-specific federal statute" such as the Securities Exchange Act supplies personal jurisdiction.  Because Plaintiffs do not dispute that venue in the SDNY is appropriate under Section 27 of the Exchange Act, the SDNY has personal jurisdiction based on Defendants' national minimum contacts and Rule 4(k)(2) does not apply. This conclusion is reinforced by the fact that Plaintiffs fail to cite a single case in which any U.S. court has ever based personal jurisdiction on Rule 4(k)(2) in an Exchange Act case.

*Finally*, the record demonstrates that Defendants would be subject to specific personal jurisdiction in New York in this case if it were necessary to establish such jurisdiction.

Accordingly, the Court should reject Plaintiffs' attempt to invoke Rule 4(k)(2) and should transfer this action to the SDNY under 28 U.S.C. § 1406(a).[1]

---

[1] Defendants' submission is lengthy.  This length, while regrettable, has been necessitated by Plaintiffs' lengthy submission and the 45 cases Plaintiff cited for the first time in that submission.  While Plaintiffs' argument is fundamentally flawed, Defendants felt obliged to address each of Plaintiffs' arguments.

## RELEVANT FACTS

The record includes the following facts concerning Defendants' contacts with New York,

and the SDNY in particular, with respect to the allegations in this lawsuit.

- GDS's shares are listed and trade on the New-York based NASDAQ stock exchange. AC ¶¶ 23, 96.

- GDS's largest shareholders are located in New York.  Plaintiffs seek to represent a nationwide class of shareholders.  AC ¶ 95.  GDS's four largest shareholders are *all* based in New York City, and together comprise approximately 41.9% of the "free float" of GDS's American Depository Shares (ADS), as of September 30, 2018.  Newman Decl. ¶ 9.  In addition, the original named plaintiff in this lawsuit resides in New York State. Turner Decl. ¶ 20; Pls. Supp. 11 n.6.

- GDS sell-side analysts are located in New York.  During the class period, three of the ten sell-side analysts covering GDS were located in New York City.  Newman Decl. ¶ 8.

- Plaintiffs' core allegations relate directly to the SDNY.  Plaintiffs allege that GDS made fraudulent misstatements in its 2017 Form 20-F concerning its acquisitions and operations, which were directed to GDS's shareholders and analysts, AC ¶¶ 43, 57, 73, many of whom were based in New York.  Indeed, GDS's 2017 Form 20-F was sent to, and is available for inspection at, *inter alia*, the SEC's Regional Office in Manhattan. Turner Decl. Ex. 3 (GDS 2017 Form 20-F) at 149.  GDS's August 14, 2018 earnings call, which Plaintiffs claim was misleading, was also attended by two New York-based analysts who cover GDS.  AC ¶ 89; Newman Decl. ¶ 13.

- GDS executives regularly travel to New York to meet investors and analysts.  Since GDS's 2016 IPO, GDS's CEO (Mr. Huang) and CFO (Mr. Newman) have traveled to New York every quarter to discuss GDS's business with its existing and potential investors and analysts, making ten trips in total through February 22, 2019 (the date of Defendants' motion).  Huang Decl., ¶ 4; Newman Decl. ¶ 10.

- GDS appointed a New York agent for service of process.  GDS's IPO registration statement disclosed that it appointed Law Debenture Corporate Services Inc. as its registered agent for service of process for suits brought in the SDNY under the federal securities laws or any action brought against it in New York state courts under New York securities laws.[2]  On September 30, 2018, GDS's contract with that agent ended, and GDS appointed another New York-based agent for service of process, located within the SDNY, upon which Plaintiffs served GDS with the original summons and complaint on October 5, 2018.  Newman Decl. ¶ 7.

---

[2] Form F-1 (Oct. 27, 2016) at 76, available at
https://www.sec.gov/Archives/edgar/data/1526125/000104746916016326/a2230101zf-1a.htm.

## ARGUMENT

### I.   FRCP 4(K)(2) DOES NOT APPLY HERE BECAUSE DEFENDANTS HAVE CONSENTED TO PERSONAL JURISDICTION IN NEW YORK

Plaintiffs claim that in this Circuit "a defendant may not defeat Rule 4(k)(2) by simply consenting to another state's jurisdiction if jurisdiction in that state is not proper." Pls. Supp. at 1. In support, Plaintiffs cite a decision by a panel of the Federal Circuit in *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012). *Id*. That out-of-circuit case, however, was confined to circumstances where "a defendant seeks to overturn a default judgment predicated on Rule 4(k)(2) by consenting to an alternate forum" *after* judgment is entered. *Id*. The Federal Circuit made clear the narrowness of its holding in stating that "***we need not decide today the general requirements for a defendant to prevent the application of Rule 4(k)(2) by consenting to suit in another jurisdiction***." *Id*. at 1295 (emphasis added). Thus, the Federal Circuit *did not decide* the issue for which Plaintiffs cite the case and its holding has no application here.

Far more importantly, Plaintiffs fail to mention that the Fifth Circuit reached the *exact opposite* conclusion from what Plaintiffs argue here. In *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004), the Fifth Circuit interpreted Rule 4(k)(2) in a case where a defendant contested jurisdiction in New York. The Fifth Circuit stated:

> Before examining [defendant's] contacts with the United States as a whole, we first consider the requirement of the last sentence of Rule 4(k)(2) that it only applies if the defendant is not subject to jurisdiction in any state. We agree with the Seventh Circuit, that a piecemeal analysis of the existence *vel non* of jurisdiction in all fifty states is not necessary. ***Rather, so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction***. *See, e.g.*, *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) ("If ... the defendant contends that he cannot be sued in the forum state and ***refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).***").

*Id*. (emphasis added). Accordingly, under *Adams*, a defendant's failure or refusal to "concede to jurisdiction in another state" is a necessary condition to application of Rule 4(k)(2). This flows

directly from the fact that personal jurisdiction (unlike subject matter jurisdiction) can be waived by a defendant. *PaineWebber Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 461 (5th Cir. 2001) ("[T]he requirement of personal jurisdiction is a waivable right").[3]

Numerous courts within the Fifth Circuit have cited and relied upon *Adams* in similar circumstances. For example, in *Research in Motion Limited v. InPro II Licensing, S.A.R.L.*, 61 Fed.R.Serv.3d 154 (N.D. Tex. 2005), Judge Boyle relied on *Adams*, rejecting plaintiff's attempt to invoke Rule 4(k)(2) because defendant conceded that it was subject to personal jurisdiction in two other states. Likewise, in *Freescale Semiconductor, Inc. v. AmTran Technology Co., Ltd.*, 2014 WL 1603665 at *3 (W.D. Tex. Mar. 19, 2014), the court held that "because [defendant] has explicitly stated that its contacts and conduct in California render [defendant] amenable to personal jurisdiction in California, the 'federal long-arm statute' defined in Rule 4(k)(2) does not apply."[4]

---

[3] *See also ISI International*, relied upon by the Fifth Circuit in *Adams*, in which the Seventh Circuit held that "A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there..." 256 F.3d at 552.

[4] *See also Nabulsi v. H.H. Sheikh Issa Bin Zayed Al Nahyan*, 2007 WL 2126542 at *9 (S.D. Tex. 2007) ("In this circuit as long as a defendant does not concede to jurisdiction in another state, a court may use Rule 4(k)(2) to confer jurisdiction."); *Nocando Mem Holdings, Ltd. v. Credit Commercial De France, S.A.*, 2004 WL 2603739 at *38 (W.D. Tex. Oct. 6, 2004) ("In response to this Court's prior order, [defendant] conceded that it would be subject to jurisdiction in New York, and therefore Rule 4(k)(2) does not apply."); *Safety Link International, Inc. v. Boyce*, 2010 WL 1378989 at *2 (E.D. Tex. Mar. 11, 2010), *report and recommendation adopted by* 2010 WL 1292254 (E.D. Tex. Mar. 31, 2010) ("When a foreign defendant has sufficient contacts with the United States as a whole to satisfy due process concerns, but does not concede jurisdiction in any single state, a court may use Rule 4(k)(2) to confer jurisdiction."). The Fifth Circuit's recent decision in *Nagravision SA v. Gotech International Technology Ltd.*, 882 F.3d 494 (5th Cir. 2018), is not to the contrary, as it addressed the "very specific question of who bears the burden of proof when a Rule 60(b)(4) challenge is made solely on the argument that the requirement of Rule 4(k)(2)(A) – that defendant is not subject to jurisdiction in any state's courts of general jurisdiction – is not met." *Id.* at 499. *Nagravision* cited to and is consistent with *Adams*, and the "special question" it dealt with has no application here.

In their briefs and at oral argument, Defendants have repeatedly represented that they are subject to personal jurisdiction in New York.  Plaintiffs have never contradicted Defendants' assertion.  In addition, GDS has appointed an agent for service of process in New York, consenting to jurisdiction in New York.  Defendants' consent to personal jurisdiction in New York[5] is dispositive of Plaintiffs' attempt to invoke Rule 4(k)(2).  This Court can rely on *Adams* and need not go further in its analysis.

## II.    FRCP 4(K)(2) DOES NOT APPLY BECAUSE A "SITUATION-SPECIFIC FEDERAL STATUTE" PROVIDES PERSONAL JURISDICTION

### A.    FRCP 4(k)(2) does not apply if personal jurisdiction has been conferred through a "situation-specific federal statute"

Plaintiffs also cannot invoke FRCP 4(k)(2) because the rule does not apply where a situation-specific federal statute confers personal jurisdiction over defendants in at least one other federal court.  Here, the nationwide service of process provision in Section 27 of the Exchange Act confers personal jurisdiction over Defendants in the SDNY because Section 27's venue requirements are met in that district.  This is dispositive.  Accordingly, it is unsurprising that Plaintiffs cite no case (and Defendants have found none) relying on FRCP 4(k)(2) to establish personal jurisdiction in an Exchange Act action.

In *U.S. v. Swiss Am. Bank, Ltd.*, 191 F.3d 30 (1st Cir. 1999), the First Circuit held that:

> [A] plaintiff who seeks to invoke Rule 4(k)(2) must make a prima facie case for the applicability of the rule. This includes a tripartite showing (1) that the claim asserted arises under federal law, (2) *that personal jurisdiction is not available under any situation-specific federal statute*, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements.

---

[5] To avoid any doubt, all Defendants reiterate that they consent to personal jurisdiction in New York state courts of general jurisdiction for the purposes of this action.

*Id*. at 41 (emphasis added).  Various district courts within the Fifth Circuit and elsewhere have

favorably cited *Swiss American Bank*'s interpretation of Rule 4(k)(2).  *See, e.g.*, *Johnson v. PPI*

*Tech. Servs., L.P.*, 926 F. Supp. 2d 873 (E.D. La. 2013); *Johnson v. PPI Tech. Servs., L.P.*, 2013

2404237, at *6 (E.D. La. May 31, 2013).[6]  Without even citing *Swiss American Bank*, Plaintiffs

describe the holdings in such cases as "dicta," and seek to discredit them as being inconsistent

with Rule 4(k)(2).  Pls. Supp. at 6 n.4.  But Plaintiffs could not be more wrong, as is clear from

the purpose of Rule 4(k)(2).

   Rule 4(k)(2) was added to the FRCP in 1993 to fill a gap in personal jurisdiction

identified by the Supreme Court in *Omni Capital International v. Rudolf Wolff & Co.*, 484 U.S.

97 (1987).  In *Omni*, the Supreme Court affirmed two decisions holding that, in cases arising

under a federal statute that "is silent as to service of process," a district court could exercise

personal jurisdiction only if permitted under the long-arm statute of the state where the district

court sat.  484 U.S. at 101-02 (quotation omitted).  The Supreme Court did not "remed[y] this

bizarre hiatus in the Rules" itself, because "[t]hat responsibility, in our view, better rests with

those who propose the Federal Rules of Civil Procedure and with Congress."  *Id*. at 102, 111.

The Court emphasized that the federal statute in question—the Commodity Exchange Act—did

not authorize nationwide service of process for plaintiff's claims, which "contrasts sharply with

the service provisions of the securities laws," including Section 27, and suggested that the

drafters of the Federal Rules could remedy this situation by enacting "[a] narrowly tailored

---

[6] *See also Aqua Shield, Inc. v. Inter Pool Cover Team*, 2007 WL 4326793, at *8 (E.D.N.Y. Dec. 7, 2007); *Porina v. Marward Shipping Co., Ltd.*, 2006 WL 2465819, at *4 (S.D.N.Y. Aug. 24, 2006) *aff'd* 521 F.3d 122 (2d Cir. 2008); *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 34-35 (D.D.C. 2000); 62B Am. Juris. 2d Process § 150 (noting the requirement that "the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction *and no situation-specific federal statute* confers personal jurisdiction over defendant").

service of process provision, authorizing service on an alien in a federal-question case when the alien is not amenable to service under the applicable state long-arm statute." *Id.* at 106, 111.

In 1993, Rule 4(k)(2) was enacted in response to *Omni*'s suggestion.  *See* Fed. R. Civ. P. 4, 1993 Advisory Committee Notes (describing genesis of the rule).  Since then, numerous Circuit courts and leading commentaries have held that Rule 4(k)(2) exists solely to fill this narrow gap in federal court jurisdiction.[7]  As the Fifth Circuit has explained:

> [T]here was a gap in the courts' jurisdiction: while a defendant may have sufficient contacts with the United States as a whole to satisfy due process concerns, if she had insufficient contacts with any single state, she would not be amenable to service by a federal court sitting in that state. Although the Supreme Court recognized this problem in *Omni Capital International v. Rudolf Wolff & Co.*, it declined to correct it by decisional rule. "In *Omni Capital*, the Court determined that the jurisdiction of a federal court, even in federal question cases, *in the absence of a statutory provision for service*, was limited by the forum state's long-arm statute as a result of the incorporation by Rule 4(e), and not by the Due Process Clause." 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1069, at 88 (Supp.1996). Rule 4(k)(2) was adopted in response to *this* problem of a gap in the courts' jurisdiction.

*World Tanker Carriers v. MV Ya Mawlaya*, 99 F.3d 717, 721-22 (5th Cir. 1996) (first emphasis added; second original); *see also Adams*, 364 F.3d at 651 (same).  Rule 4(k)(2) thus exists solely as a last resort to assert personal jurisdiction over defendants who would otherwise avoid federal court jurisdiction in cases arising under federal law where there is no federal statute with nationwide service of process provision conferring jurisdiction and the defendant cannot be reached by any state long-arm statute.

Plaintiffs further argue that certain courts have asserted personal jurisdiction over defendants under Rule 4(k)(2) notwithstanding the existence of concurrent federal court jurisdiction under other statutes, but that too is wrong.  Plaintiffs claim that *FrontPoint Asian*

---

[7] *See, e.g.*, *Swiss Am. Bank*, 191 F.3d at 41; *ISI Int'l, Inc.*, 256 F.3d at 551; Charles Alan Wright & Arthur R. Miller, 4A Federal Practice and Procedure §§ 1168.1, 1169, 1124; 62B Am. Juris. 2d Process § 150.

*Event Driven Fund, L.P. v. Citibank, N.A.*, 2018 WL 4830087 (S.D.N.Y. Oct. 4, 2018), is

"particularly instructive" because, according to Plaintiffs, the court found jurisdiction proper

under Rule 4(k)(2) "without having to rely on Section 12 of the Clayton Act." Pls. Supp. at 4.

But the *FrontPoint* court determined that Rule 4(k)(2) applied only *after* concluding that—unlike

here—"venue may be improper under the Clayton Act," thus precluding the court from relying

upon the Clayton Act's nationwide service of process provision. *Id*. at *9. *FrontPoint* therefore

supports Defendants' position that the lack of jurisdiction under a situation-specific federal

statute is a prerequisite to invoking Rule 4(k)(2).[8]

### B.      The SDNY has personal jurisdiction over Defendants under Section 27 of the Exchange Act

In their initial motion to dismiss, Defendants explained that they were subject to venue

and personal jurisdiction in the SDNY pursuant to Section 27(a) of the Exchange Act as part of

their motion for transfer of this case to the SDNY as a "clearly more convenient" forum under 28

U.S.C. § 1404(a). Mot. at 19-29. In connection with that motion, Defendants argued that:

> The SDNY satisfies the threshold requirement for transfer pursuant to Section 1404(a), namely that it is a district in which Plaintiffs could have originally brought this case. *See Volkswagen I*, 371 F.3d at 203. GDS's ADS shares are listed on the New York-based NASDAQ exchange, which is sufficient to lay venue under Section 27. AC ¶ 20; *see United States v. Svoboda*, 347 F.3d 471, 484 (2d Cir. 2003) (execution of at-issue trades on New York based stock exchange sufficient to establish venue in the SDNY). Consequently, in the SDNY, Plaintiffs could take advantage of Section 27's nationwide service of process clause to establish personal jurisdiction over Defendants in the SDNY based on their minimum contacts with the United States. *See Landry v. Price Waterhouse Chartered Accountants*, 715 F.

---

[8] Plaintiffs also cite *Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F. Supp. 484, 488 (D. Mass. 1996) and *Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 69 (D. Mass. 2015), two Massachusetts district court patent cases permitting invocation of Rule 4(k)(2) even though foreign defendants were subject to personal jurisdiction in the Eastern District of Virginia by operation of 35 U.S.C. § 293. Pls. Supp. at 5. *Pharmachemie* predates the First Circuit's decision in *Swiss American Bank* holding that a predicate to invoking Rule 4(k)(2) is the requirement that there be no "situation-specific federal statute," and *Venmill* simply relied on *Pharmachemie* without mentioning, let alone reconciling its result with, *Swiss American Bank* and ultimately refused to apply Rule 4(k)(2) because doing so would violate Due Process. Neither case has persuasive value.

Supp. 98, 101 (S.D.N.Y. 1989) (registering and trading stock on NASDAQ exchange sufficient to establish minimum contacts with United States by corporation and its directors).

Mot. at 20.  Plaintiffs *did not contest* that venue was proper in the SDNY under Section 27, thus conceding the point.[9]  Accordingly, the Court should rely upon Section 27's integrated nationwide service of process provision to confer personal jurisdiction over Defendants.

Moreover, it is clear that venue for this action is appropriate in the SDNY under Section 27.  Section 27's "act or transaction constituting the violation" venue test is satisfied by any act "'of material importance to the consummation of the scheme'" and "need not be crucial." *Hilgeman v. Nat'l Ins. Co. of Am.*, 547 F.2d 298, 301 (5th Cir. 1977) (quoting *Hooper v. Mountain States Sec. Corp.*, 282 F.2d 195, 204-05 (5th Cir. 1960)).  Acts such as sending materials into a district, conducting telephone calls with persons in a district, preparing offering materials that the defendant should reasonably foresee would end up in the district, or even making misleading statements during conferences calls and television appearances outside the district can be sufficient to satisfy this venue test.  *See, e.g.*, *Rentea v. Janes*, 2011 WL 3022568, at *2 (W.D. Tex. July 22, 2011) (conference calls and TV appearances outside forum that reached investors inside forum sufficient); *SEC v. Rizvi*, 2010 WL 2949311, at *4 (E.D. Tex. July 2, 2010), report and recommendation adopted, 2010 WL 2949302 (E.D. Tex. July 23, 2010) (receipt of misleading oral and written statements by investors in desired forum sufficient to

---

[9] Further, as noted in Defendants' moving brief (Mot. at 10), two other lawsuits were filed in the SDNY premised on the same allegations, in each case alleging that venue was proper in the SDNY.  *See* Complaint at ¶ 18, *Allison v. GDS Holdings Limited, et al.*, 18-cv-6960 (S.D.N.Y. Aug. 2, 2018); Complaint at ¶ 10, *Queri v. GDS Holdings Limited, et al.*, 18-cv-8810 (S.D.N.Y. Sept. 26, 2018).  The Lead Plaintiff in this action, Yuanli He, as well as his counsel here, the Rosen Law Firm, P.A., moved for appointment as lead plaintiff and lead counsel, respectively, in both the *Allison* and *Queri* actions.  *See Allison*, 18-cv-6960 (S.D.N.Y.) Dkt. No. 15; *Queri*, 18-cv-8810 (S.D.N.Y.) Dkt. No. 7.  At no time did Plaintiff or his counsel inform the SDNY that they believed personal jurisdiction was lacking in the SDNY, that venue was inappropriate in the SDNY or that they intended to oppose any effort to litigate this action in the SDNY.

satisfy venue test).  As an SDNY court stated in *Zagami v. Cellceutix Corp.*, 2016 WL 3199531

(S.D.N.Y. June 8, 2016), a case in which The Rosen Law Firm represented the plaintiff:

> Misrepresentations "occur" not only in the district in which they are made, but also
> the district or districts in which they are received.  *See Meszaros v. Klick*, No. 09
> Civ. 765S (WMS), 2011 WL 5238488, at *3 (W.D.N.Y. Oct. 29, 2011) (collecting
> cases); *In re AES Corp. Sec. Litig.*, 240 F. Supp. 2d 557, 559 (E.D. Va. 2003) ("As
> more than one district court has put it: 'Venue will be sustained in a securities case
> where a defendant causes false or misleading information to be transmitted into a
> judicial district, even if the defendant never has been physically present in that
> district.'" (citation omitted) (collecting cases)).  The SAC alleges
> misrepresentations that were widely disseminated via documents publicly filed
> with the SEC and popular media, and which defrauded a broad class of investors
> —including class members in New York. (SAC ¶¶ 1, 6, 10, 22, 27). Consequently,
> this case may be brought in the Southern District of New York.

*Zagami*, 2016 WL 3199531, at *4.

The Section 27 venue standard is met in the SDNY, based on the facts set forth earlier in

this submission (*see* Relevant Facts), in particular: GDS's NASDAQ listing; GDS's largest

shareholders being based in New York; GDS executives' quarterly trips to New York to meet

with investors and analysts to discuss its business and results; the broad dissemination of the

allegedly fraudulent SEC Form 20-F annual reports and their filing with the SEC's New York

office; and the participation of New York-based analysts in the August 14, 2018 earnings call.

Accordingly, the appropriate personal jurisdiction inquiry is whether Defendants maintain

minimum contacts with the United States as a whole, a fact that is not in dispute.

In sum, this Court should decline Plaintiffs' invitation to be the first court in the United

States to employ Rule 4(k)(2) to confer personal jurisdiction in an Exchange Act action.

Moreover, such a ruling would be particularly inappropriate here given the undisputed factual

record establishing that venue under Section 27 of the Exchange Act is present in the SDNY and

thus Defendants are subject to nationwide service of process.

**III.     FRCP 4(K)(2) ALSO DOES NOT APPLY BECAUSE NEW YORK STATE COURTS CAN ASSERT PERSONAL JURISDICTION OVER DEFENDANTS**

Finally, while the Court need not reach this issue, Rule 4(k)(2) is also inapplicable because Defendants are subject to specific personal jurisdiction in New York state courts.  N.Y. CPLR 302(a) is the relevant New York long-arm statute, which confers specific jurisdiction "[a]s to a cause of action arising from any of the acts enumerated in this section," including where a defendant "commits a tortious act without the state causing injury to person or property within the state" (CPLR 302(a)(3)), or where it "transacts any business" in New York (CPLR 302(a)(1)).[10]

**A.     Personal jurisdiction is present under the "tortious act without the state causing injury to person or property within the state" standard in N.Y. CPLR 302(a)(3)**

Defendants are subject to personal jurisdiction in New York state courts in this case under CPLR 302(a)(3), which confers specific jurisdiction over any non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state … if he (i) regularly does or solicits business, or engages in any other persistent course of conduct … in the state."  All elements of the statute are met here.

**1.     Defendants' Alleged Tortious Conduct Was Aimed In Significant Part At, And Allegedly Caused Injury To, New York-Based Investors**

Specific jurisdiction is appropriate under CPLR 302(a)(3)(i) because Plaintiffs allege that Defendants engaged in conduct (making false or misleading statements) outside of New York that hurt all GDS investors (including, obviously, the more than 40% of shares held by New

---

[10] Plaintiffs also argue that Defendants are not subject to *general* personal jurisdiction in New York under CPLR 301.  Pls. Supp. at 15-16.  Defendants agree.  The question here is whether New York state courts have *specific* personal jurisdiction over Defendants with respect to the allegations in this case.

York residents).  Seeking to distance themselves from the putative class of GDS investors they claimed to be willing to represent, Plaintiffs now claim that no harm has been suffered in New York because the *named* Plaintiffs, Yuanli He and Michael Zollo, "are not located in New York" and thus "did not suffer any injury 'within the state.'"  Pls. Supp. at 13.  But in the class action context, the locations of putative class members are relevant when it comes to jurisdiction: "[t]hose plaintiffs who cannot independently meet the 'injury in New York' requirement [of CPLR 302(a)(3)] may rely on the factual and jurisdictional links of proposed class members who were injured here."  *Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 124 (E.D.N.Y. 2000); *see also Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476, 485 (S.D.N.Y. 2013) (finding jurisdiction under CPLR 302(a)(3) over defendants in putative class action filed by Minnesota resident, where tortious conduct allegedly caused injury to unnamed New York residents).  CPLR 302(a)(3) requires that at least one absent class member relied upon the misrepresentation in New York, a showing that is easily met here; the original named plaintiff, Hamza Ramzan, resides in New York.  Turner Decl. ¶ 20.  And in this "fraud-on-the-market" (see AC ¶¶ 102-103) class action, all other New York investors who are members of the putative class are relevant to the jurisdictional inquiry.

Plaintiffs further contend that Defendants' conduct was not in significant part "expressly aimed" at New York-based investors.[11]  But the record shows otherwise.  As discussed above,

---

[11] The "expressly aimed at" standard Plaintiffs cite comes from the federal district court decision in *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 600 (S.D.N.Y. 1998) which derived the standard from the U.S. Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 786 (1984), which interpreted California's long-arm statute, not New York's.  Defendants are unaware of any New York appellate court having adopted this "expressly aimed at" standard for asserting personal jurisdiction under CPLR 302(a)(3); to the contrary, the New York Court of Appeals has suggested that this standard does not apply given the differences between the California and New York long-arm statutes.  *See Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 512-13 (2007); *accord Deutsche Bank AG v. Vik*, 163 A.D.3d 414, 416 (N.Y. App. Div. 1st Dep't 2018) (discussing "expressly aimed at"

throughout the class period Mr. Huang, Mr. Newman and other GDS executives regularly visited New York specifically to meet with "existing and potential investors and analysts" to discuss their investment in GDS's ADS shares, as well as GDS's business and performance.  Newman Decl. ¶ 10.  These discussions relate directly to Plaintiffs' claims that Defendants misrepresented core aspects of their results and operations.  Moreover, GDS's largest four investors were *all* based in New York, and collectively held over 40% of GDS's outstanding ADS.  Newman Decl. ¶ 9.  The facts here are nothing like those in the "stream-of-commerce" product liability cases Plaintiffs cite, in which foreign defendants had no contacts whatsoever with New York, and yet whose products "somehow 'found [their] way' into New York."[12]  On this record, Defendants' statements in SEC filings and earnings calls were aimed in significant part at New York investors.

## 2. Defendants Also Meet Either The "Regularly Solicits Business" or "Persistent Court of Conduct" Test Under CPLR 302(a)(3)(i)

Plaintiffs also contend that Defendants cannot meet either subpart (i) or (ii) of CPLR 302(a)(3) because GDS conducts all of its business and derives all of its revenue in China.  Pls. Supp. at 13-14.  But subpart (i)'s alternative grounds of either "regularly solicit[ing] business" or engaging in a "persistent course of conduct" in New York are easily met here.  As courts have held, the "regularly does or solicits business" test "is less than that required under [CPLR 301's] 'doing business' standard," *Ziegler, Ziegler & Assocs. LLP v. China Digital Media Corp.*, 2010

---

standard in context of due process analysis, not CPLR 302(a)(3)).  Nonetheless, even if the standard does apply here, it is met.

[12] *See, e.g.*, *Cortland Racquet Club, Inc. v. Oy Saunatec, Ltd.*, 978 F. Supp. 520, 524 (S.D.N.Y. 1997) (German corporation with no New York contacts could not be haled into New York court under CPLR 302(a)(3) where the product in question "somehow 'found its way' into New York" after first being sold by defendant to Swiss corporation, which sold it to a Norwegian subsidiary, which then sold it to an unrelated Finnish corporation).

WL 2835567, at *6 (S.D.N.Y. July 13, 2010), and can be established through "[c]onsistent

business visits to New York…." *Del Ponte v. Universal City Dev. Partners, Ltd.*, 2008 WL

169358, at *5 (S.D.N.Y. Jan. 16, 2008).  Here, Defendants' regular quarterly visits to New York

over the past three years to meet GDS's largest ADS investors and analysts to discuss their

business, meet this standard.  *See, e.g.*, *Plastwood Corp. v. Robinson*, 2004 WL 1933625, at *5

(S.D.N.Y. Aug. 30, 2004) ("repeated business trips to New York," including annual and semi-

annual visits and intermittent business meetings in the three years prior to the lawsuit, "could

amount to a 'persistent course of conduct' or even 'regularly doing business.'").

> **B.**     **Personal jurisdiction is also present under the "transacts business" standard
>             in N.Y. CPLR 302(a)(1)**

New York CPLR 302(a)(1) also confers specific jurisdiction "over any non-domiciliary

… who in person or through an agent: (1) transacts any business within the state or contracts

anywhere to supply goods or services in the state."  Plaintiffs' allegations of misstatements to

GDS's shareholders are inextricably linked to Defendants' contacts with New York, and are

sufficient to confer jurisdiction.

> **1.**     **GDS's listing on the New York-based NASDAQ stock
>             exchange supports "transacts business" jurisdiction**

The Complaint alleges that immediately following the issuance of a report by short-seller

Blue Orca on July 31, 2018, "the price of GDS ADSs fell $12.92, or over 37% . . . damaging

Plaintiffs and other GDS investors."  AC ¶ 16.  The ADS shares that are the subject of the

alleged damages trade solely on the NASDAQ exchange.  *Id*. ¶ 33.  All investors in Plaintiffs'

putative class therefore purchased GDS's ADS shares on NASDAQ, and the price drop that

Plaintiffs allege injured all class members is the price on NASDAQ.  Thus, Defendants'

NASDAQ listing directly relates to Plaintiffs' lawsuit.  Plaintiffs cite cases holding that a stock

exchange listing and the use of New York-based brokers are not alone sufficient to confer "transacting business" jurisdiction.  Pls. Supp. at 9.  But those cases do not hold that a stock exchange listing is irrelevant to the Court's jurisdictional analysis.[13]  Here, that factor together with the others described below support "transacting business" jurisdiction.[14]

> **2.     GDS's other business contacts with New York support "transacts business" jurisdiction**

As outlined above, in addition to its NASDAQ listing, there are numerous connections between New York and Defendants GDS, Huang, and Newman that directly relate to the allegations in this lawsuit.  In particular, GDS's largest shareholders are based in New York, and GDS executives systematically made quarterly trips to New York to meet with those investors and with analysts to discuss GDS's business.

---

[13] *See, e.g.*, *Deer Consumer Prods., Inc. v. Little*, 35 Misc. 374 (N.Y. Supr. Ct., N.Y. Cnty. Jan. 27, 2012) (plaintiff's stock listing on New York exchange did not confer jurisdiction under CPLR 302(a)(1) where out-of-state defendant's defamatory statements were targeted at out-of-state plaintiff, in part due to "heightened requirements" in defamation cases); *Wolfson v. Conolog Corp.*, 2009 WL 465621, at *4 (S.D.N.Y. Feb. 25, 2009) (no jurisdiction under CPLR 302(a)(1) because of lack of sufficient nexus between plaintiff's claims and NASDAQ listing, not because NASDAQ listing did not demonstrate "transacting business" in New York); *Transasia Commodities Ltd. v. Newlead JMEG, LLC*, 45 Misc. 3d 1217(A), 4 (N.Y. Sup. 2014) (same); *L.F. Rothschild, Unterberg, Towbin v. McTamney*, 89 A.D.2d 540 (N.Y. App. Div. 2d Dep't 1982) (defendant making a few phone calls into New York which "resulted in a telephonic purchase order of stock" did not amount to "transacting business" in the state).

[14] Acknowledging that "NASDAQ is headquartered in New York City," Plaintiff nonetheless submits a procedurally improper expert declaration and argues that "NASDAQ is not meaningfully a New York Exchange." Pls. Supp. at 8; Werner Decl.  Plaintiffs are wrong.  *First*, the fact that NASDAQ's computer servers are in New Jersey (Werner Decl. ¶ 10) is irrelevant; the location of its computer servers does not define the location of the stock exchange.  *See U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 524, 529 (S.D.N.Y 2014) (finding Defendants transacted business in New York for purposes of CPLR 302(a)(1) where Defendants placed bids on NASDAQ Futures Exchange, headquartered in New York, despite Defendants' argument that Plaintiff had "not alleged that the NFX. . . technological hardware through which orders were placed were actually located in New York.").  *Second*, Dr. Werner's citation to a 2011 article claiming that "approximately 61% of [NASDAQ's] market makers are not located in New York City" also does not help Plaintiffs, as it presumably means that approximately 39% of NASDAQ's market makers *were* located in New York City.  Werner Decl. ¶ 11.  In any event, NASDAQ's website holds itself out as a New York-based exchange, listing New York addresses for its Global Headquarters and the NASDAQ Stock Market.  *See* https://www.nasdaq.com/contact-us (last visited September 20, 2019).

Plaintiffs contend that Defendants' frequent business trips to New York to meet with investors and analysts to discuss its business are irrelevant to the jurisdictional inquiry because the two named plaintiffs, Yuanli He of California, and Michael Zollo of Illinois, do not live in New York and did not attend those meetings.  Pls. Supp. at 10.  But this is not an individual action by Yuanli He and Michael Zollo; it is a class action brought on behalf of a putative class of all GDS investors who acquired ADS shares within the Class Period.  AC ¶¶ 95-104. Plaintiffs nonetheless argue that meetings with putative class members are irrelevant to the jurisdictional analysis, citing *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017) and related cases.  Pls. Supp. at 10-11.  However, these cases are inapposite.  In *Bristol-Myers*, the Supreme Court held that it violated the Fourteenth Amendment for California to exercise personal jurisdiction over Bristol Myers in California with respect to mass tort claims brought by non-California residents.  Of course, in that case, the claims were brought under California law and thus the California long-arm statute (and the Fourteenth Amendment) were applicable.  Here, by contrast, because Plaintiffs bring their claims exclusively under the Exchange Act, the claims are subject to nationwide service of process and thus only a Fifth Amendment due process analysis (i.e., national contacts) is required.  Moreover, in *Bristol-Myers*, defendants themselves had argued that the non-resident plaintiffs must be excluded. Here, the opposite is true; Defendants agree that the SDNY is the appropriate venue for all claims by U.S. shareholders and that the SDNY has personal jurisdiction with respect to all such claims.  Thus, *Bristol-Myers* is inapplicable.[15]

---

[15] *Simon v. Ultimate Fitness Group*, 2019 WL 4382204 (S.D.N.Y Aug. 19, 2019) is similarly unavailing as it also involved a situation where a defendant sought to exclude non-residents of a state from asserting state law claims in that state's courts.  No such facts apply here.

Other factors that support jurisdiction here under CPLR 302(a)(1) include the transmission of the allegedly fraudulent SEC filings to the SEC's New York office, and the participation of New York-based investors and analysts in the August 14, 2018 earnings call that forms part of Plaintiffs' allegations of fraudulent intent on the part of Defendants.  AC ¶¶ 82, 83, 89.  New York courts consider the entirety of a defendant's New York business dealings that relate to the allegations in the case when determining whether the defendant's conduct creates personal jurisdiction under CPLR 302(a)(1).  *See U.S. Commodity Futures Trading Comm'n*, 27 F. Supp. 3d. at 529 ("What matters is whether under the totality of the circumstances Defendants availed themselves of the privileges of transacting business in the state and the benefits and protections of New York's laws.").  In determining whether an "articulable nexus" exists between a cause of action and Defendants' transaction of business in New York, courts examine the "relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim." *D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 299 (2017).  The inquiry is "relatively permissive." *Id.*  Considered collectively, the facts here meet this standard.

## CONCLUSION

Plaintiffs' eleventh-hour attempt to convince the Court that it should exercise personal jurisdiction over Defendants under Rule 4(k)(2) is based on a misreading and misapplication of the rule.  Moreover, even if the Court were to read Rule 4(k)(2) the way Plaintiffs advocates here, the factual record does not support their argument.  Accordingly, Defendants respectfully request that the Court transfer this action to the U.S. District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406(a).  Should this Court nonetheless decide that it does in fact have personal jurisdiction, discretionary transfer to the SDNY pursuant to 28 U.S.C. §

1404(a) remains appropriate for all the reasons previously cited in Defendants' moving and reply briefs.

DATED:        September 20, 2019

Respectfully submitted,

SIEBMAN FORREST BURG & SMITH, LLP

By:    _/s/ Clyde M. Siebman_
Clyde M. Siebman
Texas Bar No. 18341600
Elizabeth S. Forrest
Texas Bar No. 24086207
Federal Courthouse Square
300 North Travis Street
Sherman, TX 75090
Telephone: (903) 870-0070
Facsimile: (903) 870-0066
clydesiebman@siebman.com
elizabethforrest@siebman.com

SIMPSON THACHER & BARTLETT LLP
James G. Kreissman (admitted *pro hac vice*)
Alan C. Turner (admitted *pro hac vice*)
Adam Goldberg (admitted *pro hac vice*)
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
Email: jkreissman@stblaw.com
Email: aturner@stblaw.com
Email: agoldberg@stblaw.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of September 2019, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Clyde M. Siebman*
Clyde M. Siebman